IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

HEIRS OF WILLIAM E. HODGE                                    PLAINTIFFS

V.                                    CIVIL ACTION # 2:07cv40-KS-MTP

KEVIN FLYNN, TOM EASON,
SHERIFF LARRY DYKES.
JONES COUNTY, MISSISSIPPI,
AND JOHN DOES A THROUGH Z                              DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the Defendants' motion to dismiss claims state law claims based on statutory immunity under the Mississippi Tort Claims Act [**#13**] and 42 U.S.C. § 1983 claims based on qualified immunity from suit [**#15**].  Because the MTCA bars the Plaintiffs' claim under state tort law, and because the Plaintiffs' have failed to show both that the movants' actions were deliberately indifferent to a known risk of harm to the inmate and were objectively unreasonable, the motion for summary judgment based on immunity from suit is **granted**.


FACTUAL BACKGROUND

This case deals with the suicide of a pretrial detainee and the actions of the jailors responsible for his confinement.  On August 16, 2005, William Hodge, a pretrial detainee in the custody of the Jones County Sheriff's Department, was set to appear before the Circuit Court of Jones County for a bond hearing.  Hodge was allegedly placed without supervision into a holding

1

cell containing various tools leftover from a recent renovation.  Prior to the hearing, Hodge went to the restroom and returned with blood on his hands.  No one at the time investigated Hodge's injury or inquired how exactly he cut himself unattended in the restroom. The Circuit Court denied Hodge's request for bond, and he was returned to the Jones County Jail.

After he was denied bond Hodge became distraught, and alarmed the officers transporting him.  Upon returning to the jail, officer Tom Eason ("Defendant Eason") ordered that Hodge be strip searched and placed on suicide watch.  Officers under Defendant Eason's command strip searched Hodge and gave him paper clothes.  They then placed Hodge in what they identified as a "maximum security cell," but left the " top and bottom flap open" so it would be easier for officers to check on him.  The officers claim they wrote "SW" on his cell to signal that he was on suicide watch.  It is unclear whether any officers supervised Hodge after he was placed in the cell.

Sometime later in the day, Hodge was observed from the hallway receiving objects from another inmate by way of the open flaps in his cell.  An officer reported that he saw "an empty milk carton" passed between the two cells, but did not enter Hodge's cell to investigate.  The officer closed the bottom flap in Hodge's cell, but left the top flap open "about 3-4 inches so we could look in and check on him."

At approximately 4:30 PM, an officer at the jail discovered Hodge's body and shouted "he's done it" down the hall toward the other jailors.  Hodge was found dead in his cell with a "blade [that] appeared to resemble a scissor blade" alongside his body.

The following day, Sheriff Larry Dykes ("Defendant Dykes") contacted Hodge's mother, Stella Holifield, and informed her that Hodge had committed suicide.  Defendant Dykes told

2

Holifield that he believed Hodge had found his suicide weapon in the holding cell at the courthouse prior to his bond hearing.

The heirs of William Hodge ("Plaintiffs") subsequently brought suit against Sheriff Larry Dykes and various employees of the Jones County Sheriff's Department, including Kevin Flynn, Tom Eason, and John Does A though Z ("Defendants").  The wrongful-death suit alleges that the Defendants violated provisions of the MTCA and 42 U.S.C. § 1983 in failing to properly monitor Hodge to protect him from self-inflicted injury while in custody. The Defendants now move to dismiss the Plaintiffs' MTCA claims based on statutory immunity and the § 1983 claims based on qualified immunity.


QUALIFIED IMMUNITY

The doctrine of qualified immunity shields government officials from suit in their individual capacity if particular conditions are met. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When the defendant to a 42 U.S.C. § 1983 claim invokes qualified immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).  To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

The qualified immunity analysis is a two-step inquiry.  The bifurcated legal standard is used "both to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  To

3

avoid the disruption of government occasioned by a lawsuit, the qualified immunity analysis should be applied "as soon as possible in a judicial proceeding, even before discovery." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

First, the court examines whether the plaintiff has alleged the "violation of a clearly established right." *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995).  To be deemed clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney v. Weaver*, 367 F.3d 337, 352 (5th Cir. 2004).  The Plaintiffs in this action must show that the corrections officers were aware of the detainee's propensity to harm himself, but were "deliberately indifferent" because they knowingly disregarded that risk. *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Second, the court asks whether the defendant's conduct was "objectively reasonable in light of 'clearly established' law at the time of the violation." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  Even when the government official violated a clearly established right, the official "is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  The objective reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).   Since qualified immunity turns upon objective factors, "a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

To carry the burden, a plaintiff must show that "all reasonable officials would have

realized that it was proscribed by the federal law on which the suit is founded." *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  The qualified immunity defense "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Turning to jailhouse suicide cases in particular, the court cannot deny qualified immunity for mere "negligent inaction" by the jailors. *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 200).  In other words, a clearly established right of the detainee is not violated by a "mere oversight." *Lemoine v. New Horizons Ranch & Center, Inc.*, 174 F.3d 629, 635 (5th Cir. 1999).  The jailer must have "subjective knowledge of a substantial risk of serious harm to a pretrial detainee but respond with deliberate indifference to that risk." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).[1]

Because of the troublesome interplay between the concept of subjective deliberate indifference and the objective reasonableness of a defendant's conduct, the Fifth Circuit has instructed that:

> the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident...And under that standard-the minimum standard not to be deliberately indifferent-the actions of the individual defendants are examined to determine, whether as a matter of law, they were objectively unreasonable

*Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328 (5th Cir. 1998).

Despite the tremendous weight the deliberate indifference standard places on plaintiffs, at

---

[1] In *Hare II*, the Fifth Circuit laid out the proper standard for analyzing wrongful death claims for suicide by pretrial detainees. *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996). The court first noted that a pretrial detainee's rights spring from the Fourteenth Amendment, and encompass any rights enjoyed by convicted prisoners under the Eight Amendment, although reference to the latter is improper before conviction. *Id*. The court concluded that "a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference." *Id.* at 643.

least one inmate's family has successfully shouldered this burden in the Fifth Circuit.[2]  In *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 2000), the appellate court refused to recognize qualified immunity from suit for a sheriff in a similar jailhouse suicide case.  The sheriff in *Jacobs* took some precautions in housing an inmate known to present a significant suicide risk, including approving more frequent checks and not initially providing her with loose bedding.  Yet the sheriff placed the inmate in a cell with a significant blind spot and several fixtures where prior inmates had hung themselves. *Id.* at 395.  The sheriff also gave the inmate a towel and blanket following a request from her attorney. *Id*.

The Fifth Circuit found that the totality of the sheriff's conduct violated the clearly established rights of the inmate because it amounted to deliberate indifference to the risk she might take her own life, despite the sheriff's efforts to prevent the suicide. *Id.*  The court found his conduct objectively unreasonable, concluding that those preventative measures were not enough to "mitigate his errors" and that "there is sufficient evidence in this record for a jury to conclude that Sheriff Daniel acted with deliberate indifference to Jacob's known suicidal tendencies." *Id*.

Relevant to the current case is the way in which *Jacobs* suggests that deliberate indifference need not be complete and utter indifference.  The sheriff  in *Jacobs* knew of the suicide risk the inmate presented, and he also did something to lessen that risk.  The sheriff was

---

[2]A handful of plaintiffs in other circuits have succeeded in making the deliberate indifference showing for a jailhouse suicide.  In *Linden*, the Sixth Circuit denied qualified immunity when a known-suicide-risk detainee was transferred from the medical unit to an isolated cell and killed himself shortly thereafter, where the officer in question was aware of the inmate's suicidal tendencies and the fact that isolation aggravated them. *Linden v. Washtenaw County*, 167 Fed. Appx. 410, 426 (6th Cir. 2006).  In *Coleman*, The Eight Circuit upheld the denial of qualified immunity when a prisoner with known suicidal tendencies was given a bed sheet and placed in a room where he was not easily observable. *Coleman v. Parkman*, 349 F.3d 534, 539 (8th Cir. 2003).

not wholly indifferent to the risk of suicide.  Yet, the appellate court looked at the totality of measures taken and was unpersuaded that the issue should be taken away from the jury.

The analogy from *Jacobs* breaks down in the instant case, however, because the sum of conduct that might add up to deliberate indifference in this case is spread over several officers. While the single sheriff in *Jacobs* was responsible for all the deliberately indifferent conduct, Hodge's case involves several different officers committing independent and divisible acts of negligence, along with some officers taking clear actions designed to lessen the risk of Hodge's suicide.  To determine whether any one officer was deliberately indifferent to Hodge's capacity to harm himself, the Court will examine the actions described in the record of each movant individually.[3]

<u>APPLICATION OF STANDARD TO EACH MOVANT</u>

The qualified immunity analysis requires the court to determine the actions of each officer individually. *Hernandez v. Tex. Dept. of Protective and Regulatory Services*, 380 F.3d 872, 883-84 (5th Cir. 2004).  Even when the defendants act in unison, the court must consider the acts of each separately for the purposes of qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

<u>Sheriff Larry Dykes</u>

---

[3] *See Thornhill v. Breazeale*, 88 F. Supp. 2d 647, 652 (S.D. Miss. 2000) (finding that giving suicidal inmate shoes with laces by one officer and placing inmate in cell with fixed shower rod by a different officer did not combine to defeat qualified immunity based on deliberate indifference because "taken separately, each act of defendants was an isolated instance of oversight.  As a matter of law, neither of these acts evidence deliberate indifference...")

It is well established that Defendant Dykes cannot be held liable under 42 U.S.C. § 1983 based on repondeat superior or vicarious liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Yet the record is silent with regard to precisely what role Defendant Dykes personally played in the Hodge suicide. None of the affidavits submitted show that Defendant Dykes made any substantive decisions on the specifics of Hodge's confinement, and no evidence in the record specifically ties Defendant Dykes to any particular act surrounding Hodge's arrival or detention. The only facts in evidence are that Defendant Dykes contacted Hodge's mother following the suicide, and that he told Hodge's mother that he thought Hodge was fine after the hearing.

The Plaintiffs allege in their response to the motion for qualified immunity that the "failure of Sheriff Dykes to implement an appropriate policy concerning prisoners or detainees on suicide watch" defeats his qualified immunity.[4] Yet the Plaintiffs' have failed to produce evidence on precisely what policy is in place, whether Defendant Dykes violated that policy, or exactly how those actions were sufficient to nullify his immunity from suit.[5] The Court cannot assume facts not in evidence, and without any evidence of actions taken by Defendant Dykes, he is entitled to qualified immunity.

---

[4] The Court might interpret this as a request to apply the "single incident exception" for failure to train under 42 U.S.C. § 1983. To defeat immunity with that claim, the plaintiff would have to show "proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different ... training." *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000). The evidence submitted, and the allegations as plead, make no such showing.

[5] A claim against a supervisory official like Defendant Dykes could be maintained "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *See Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 289 (5th Cir. 2002) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Yet with no policy alleged to exist, and no evidence produced by the Plaintiff as to the inadequacies of that policy, the Court can only conclude that the Hodge suicide was an isolated incident that was not the result of officials acting under a policy so defunct it was itself a constitutional violation.

<u>Officer Tom Eason</u>

According to the evidence in the record, Defendant Eason was the officer who transported Hodge from the Jones County Courthouse back to the jail after his bond hearing.  It was at the hearing that Hodge was left in a room with various renovation tools and was able to go the restroom and cut himself.  Defendant Eason was aware that Hodge was a suicide risk, and he informed the other officers that Hodge was suicidal when he returned with Hodge to the jail.

Upon their return, Defendant Eason instructed officer Barbara Hinton to strip search Hodge and place him on suicide watch.  Defendant Eason also expressed some concern about the mysterious cut on Hodge's hand, and according to Hinton's statement, Defendant Eason told her that "Hodge pick have took something from court [sic]."  The Court interprets that statement, along with the request to strip search Hodge, to mean that Defendant Eason informed Hinton of the risk that Hodge had taken and concealed an item from the courthouse.

Even taking this evidence in the light most favorable to the nonmovant, the Court cannot conclude that Defendant Eason was deliberately indifferent to the risk of suicide posed by Hodge. It is unclear from the record exactly who was responsible for Hodge before his hearing, and the record does not show facts that indicate that this responsibility fell directly or principally upon Defendant Eason.  Further, evidence submitted by the Plaintiff actually indicates that Defendant Eason made some reasonable efforts to avert the risk of Hodge's suicide.  While failing to prevent Hodge from taking an item from the courthouse might amount to negligence, the instructions given to other officers make it impossible for the court to see Defenant Eason's actions as deliberately indifferent to the risk that Hodge would harm himself.

The Court finds that *Hare II* offers an instructive analogy. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996).  In describing the application of the deliberate indifference standard, the Fifth Circuit stated flatly that "a state jail official might be liable for a suicide resulting from the official's failure to remove a pair of scissors from the cell of a pretrial detainee known to be suicidal, even if the state official had otherwise provided the mentally disturbed detainee with constitutionally sufficient medical care." *Id*. at 644.

A clear showing that Defendant Eason was individually responsible for Hodge during the course of his bond hearing might allow this Court to deny him qualified immunity.  Yet the Plaintiff has failed to put sufficient facts into the limited discovery record to make such a showing.  There are no affidavits or testimony from Defendant Eason himself, and none of the submitted affidavits describe with particularity the circumstances surrounding Hodge's confinement prior to the bond hearing.[6]  Because each officer's statement that the Plaintiff submitted began chronologically after Hodge was returned to the jail, they give the Court no facts with which to weigh Defendant Eason's role in the pre-hearing detention.   Therefore, the Court cannot conclude as a matter of law that Defendant Eason's actions amounted to either deliberate indifference to the suicide risk or objective unreasonableness under the circumstances.

<u>Officer Kevin Flynn</u>

The record is devoid of any evidence connecting Defendant Flynn to the Hodge suicide.

---

[6]To the extent the Court relates facts as to the events surrounding the bond hearing, it does so based on allegations stated in the complaint and the affidavit of Stella Holifield.  Only the latter constitutes evidence at this stage, and it does not contain all the facts alleged by the Plaintiffs.  Each of the statements by employees of the jail begin chronologically after the hearing, and none describe in any detail the circumstances of Hodge's confinement before or during the hearing.

None of the officers' statements submitted by the Plaintiffs show Defendant Flynn had any supervisory role over Hodge, and the single mention of Defendant Flynn in the record comes when officer Sam Perdue says that Defendant Flynn ordered the cell area secured following the discovery of Hodge's body.  With no evidence of involvement of any kind, the court must recognize Defendant Flynn's qualified immunity from suit.

MTCA CLAIMS

Miss. Code Ann. § 11-46-9(1)(m) grants immunity to "a governmental entity and its employees acting within the course and scope of their employment" against "any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution." Miss Code Ann. § 11-46-9(1)(m).  The statute "effectively cuts off" the ability of an inmate to bring suit. *Sparks v. Kim*, 701 So. 2d 1113, 1114 (Miss. 1997). As interpreted by the state's highest court, "no exceptions, restrictions, or distinctions were made to allow an inmate to bring a claim against a government entity." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1208 (Miss. 2002).

The wrongful death claim of an inmate's family is a derivative claim, and hence the family is also barred from bringing suit against the government entity. *See Webb v. DeSoto County*, 843 So. 2d 682, 684 (Miss. 2003) ("since 11-46-9(1)(m) provides [the inmate] with no remedy, it also prevents a suit by his heirs").  Mississippi law is abundantly clear on this point, and the Plaintiffs have not enlightened the Court with any authority to the contrary.

**CONCLUSION**

11

The Plaintiffs in this action have failed to overcome the defense of qualified immunity through a showing that the actions of each of the named defendants were deliberately indifferent to the known risk that the inmate would harm himself, and were also objectively unreasonable under the circumstances.  Based on the record available as to each moving defendant, the Court concludes that they are entitled to qualified immunity from suit. The Plaintiffs are further precluded from maintaining their state law claims against the named defendants based on the express provisions of the MTCA.

THEREFORE, it is ORDERED and ADJUDGED that the Defendants' motion for summary judgment based on statutory immunity [**13**] and qualified immunity [**15**] from suit is GRANTED.

SO ORDERED AND ADJUDGED this the 17th day of September, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE