IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

Heirs of WILLIAM E. HODGE                                                          PLAINTIFFS

v.                                                                     CIVIL ACTION # 2:07cv40-KS-MTP

KEVIN FLYNN, TOM EASON,
LARRY DYKES, SAM PERDUE
BARBARA HANCOCK, DAVID NEYMAN
JOSEPH SAUL, JONES COUNTY, MISSISSIPPI,
and JOHN DOES A through Z                                                          DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion to dismiss [# 34] on the basis of qualified immunity from suit by Defendants David Neyman, Barbara Hancock, Joseph Saul, and Sam Perdue. Because the Plaintiff has failed to offer either allegations or evidence that the moving Defendants were deliberately indifferent to the risk that the pretrial detainee might harm himself, and because the moving Defendants' actions were at all times objectively reasonable, the motion to dismiss should be granted.

FACTUAL BACKGROUND

This case deals with the suicide of a pretrial detainee and the actions of the jailors responsible for his confinement. William Hodge was a pretrial detainee in the custody of the Jones County Sheriff's Department. After being denied bond, Hodge was taken from the Circuit Court of Jones County and returned to confinement in the Jones County Jail. Hodge became

1

distraught following the hearing, alarming the officers who were transporting him.

Upon returning to the jail, officer Tom Eason ordered that Hodge be strip-searched and placed on suicide watch. Defendants Joseph Saul and David Neyman strip-searched Hodge and put him in paper clothes. They next placed Hodge in what they identified as a "maximum security cell," but left the "top and bottom flap open" so it would be easier for officers to check on him. The officers wrote "SW" on his cell to signal that he was on suicide watch.

Sometime later in the day, Defendant Saul observed Hodge from the hallway receiving objects from another inmate by way of the open flaps in his cell. He saw an item he identified as "an empty milk carton" passed between the two cells, but did not enter Hodge's cell to investigate. Defendant Saul placed both inmates on restriction as punishment for the attempt. He then closed the bottom flap in Hodge's cell, but left the top flap open "about 3-4 inches so we could look in and check on him."

At approximately 4:30 PM, an officer at the jail discovered Hodge's body and shouted "he's done it" down the hall toward the other jailors. Hodge was found dead in his cell with a "blade [that] appeared to resemble a scissor blade" alongside his body.

## PROCEDURAL HISTORY

The Plaintiff's claim was filed on February 26, 2007. It originally named three officers as defendants, as well as Jones County, Mississippi, the Jones County Board of Supervisors, and John Does A-Z. The named officers then moved for dismissal based on qualified immunity. On September 17, 2007, this Court entered an order granting the motion to dismiss the three named officers: Sheriff Larry Dykes, Officer Tom Eason, and Officer Kevin Flynn. The Court

determined that each were shielded from suit on the basis of qualified immunity.

The Plaintiff subsequently amended the claim, adding four new named defendants: Officer Joseph Saul, Officer Barbara Hancock, Officer Sam Perdue, and Officer David Neyman. These officers have also moved for dismissal based on qualified immunity. To contest that motion, the Plaintiff has added to the record an autopsy report on Hodge from the Mississippi Crime Lab. The record also contains the statement of Officer Kevin Flynn, submitted by the Defendants in rebuttal briefing.

## QUALIFIED IMMUNITY STANDARD

The doctrine of qualified immunity shields government officials from suit in their individual capacity if particular conditions are met. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When the defendant to a 42 U.S.C. § 1983 claim invokes qualified immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

The qualified immunity analysis is a two-step inquiry. The bifurcated legal standard is used "both to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). To avoid the disruption of government occasioned by a lawsuit, the qualified immunity analysis should be applied "as soon as possible in a judicial proceeding, even before discovery." *Hare v.*

*City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

First, the court examines whether the plaintiff has alleged the "violation of a clearly established right." *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995). To be deemed clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney v. Weaver*, 367 F.3d 337, 352 (5th Cir. 2004). The Plaintiffs in this action must show that the corrections officers were aware of the detainee's propensity to harm himself, but were "deliberately indifferent" because they knowingly disregarded that risk. *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Second, the court asks whether the defendant's conduct was "objectively reasonable in light of 'clearly established' law at the time of the violation." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Even when the government official violated a clearly established right, the official "is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). The objective reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). Since qualified immunity turns upon objective factors, "a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

To carry the burden, a plaintiff must show that "all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). The qualified immunity defense "gives ample room

for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Turning to jailhouse suicide cases in particular, the court cannot deny qualified immunity for mere "negligent inaction" by the jailors. *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 200). In other words, a clearly established right of the detainee is not violated by a "mere oversight." *Lemoine v. New Horizons Ranch & Center, Inc.*, 174 F.3d 629, 635 (5th Cir. 1999). The jailer must have "subjective knowledge of a substantial risk of serious harm to a pretrial detainee but respond with deliberate indifference to that risk." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).[1]

Because of the troublesome interplay between the concept of subjective deliberate indifference and the objective reasonableness of a defendant's conduct, the Fifth Circuit has instructed that:

> the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident...And under that standard-the minimum standard not to be deliberately indifferent-the actions of the individual defendants are examined to determine, whether as a matter of law, they were objectively unreasonable

*Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328 (5th Cir. 1998).

## APPLICATION OF STANDARD TO EACH MOVANT

---

[1] In *Hare II*, the Fifth Circuit laid out the proper standard for analyzing wrongful death claims for suicide by pretrial detainees. *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996). The court first noted that a pretrial detainee's rights spring from the Fourteenth Amendment, and encompass any rights enjoyed by convicted prisoners under the Eight Amendment, although reference to the latter is improper before conviction. *Id*. The court concluded that "a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference." *Id.* at 643.

As discussed in the Court's prior order, Hodge's case involves several different officers committing independent and divisible acts of negligence, while other officers took clear actions designed to lessen the risk of Hodge's suicide.[2] To determine whether any one officer was deliberately indifferent to Hodge's capacity to harm himself, the Court will examine the actions described in the record of each movant individually.[3] The qualified immunity analysis requires the court to determine the actions of each officer individually. *Hernandez v. Tex. Dept. of Protective and Regulatory Services*, 380 F.3d 872, 883-84 (5th Cir. 2004). Even when the defendants act in unison, the court must consider the acts of each separately for the purposes of qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

### Officer Barbara Hancock

Defendant Hancock served as a booking officer at the Jones County Jail. Upon Hodge's arrival, Officer Eason instructed that Hodge be strip-searched, and Defendant Hancock relayed that order to the jailers. Defendant Hancock also instructed jailers to place Hodge into a maximum security cell for his own protection. Defendant Hancock had no other documented involvement in Hodge's detainment.

The uncontroverted facts in evidence show that Defendant Hancock acted reasonably to

---

[2] The Court incorporates by reference the factual findings and legal conclusions of the prior order [# 26], including the discussion of qualified immunity from suit for Sheriff Larry Dykes, Officer Tom Eason, and Officer Kevin Flynn.

[3] *See Thornhill v. Breazeale*, 88 F. Supp. 2d 647, 652 (S.D. Miss. 2000) (finding that giving suicidal inmate shoes with laces by one officer and placing inmate in cell with fixed shower rod by a different officer did not combine to defeat qualified immunity based on deliberate indifference, because "taken separately, each act of defendants was an isolated instance of oversight. As a matter of law, neither of these acts evidence deliberate indifference.").

protect Hodge from the known risk that he might harm himself. There is no evidence that Defendant Hancock's actions were even negligent, as she had no reason to believe the strip-search would be unsuccessful or that Hodge might have secured a weapon internally. As such, Defendant Hancock was not deliberately indifferent to the risk that Hodge might harm himself, and is immune from suit.

### Officer Sam Perdue

According to the evidence in the record, Defendant Perdue had no direct contact with Hodge during the course of his confinement. There is also no allegations or evidence that Defendant Perdue had any duty to take part in the incarceration of Hodge, so his lack of involvement did not display any indifference toward the detainee. Therefore, there is no basis in the record to even establish negligence on the part of Defendant Perdue, let alone deliberate indifference. Defendant Perdue remains entitled to immunity from suit.

### Officer Joseph Saul

The potential liability for Defendant Saul stems from two aspects of Hodge's detention–the initial strip-search and Defendant Saul's discovery of an attempt by one inmate to secretly pass items to Hodge in his cell. Upon close examination, neither incident displayed a deliberate indifference by Defendant Saul to the risk that Hodge might harm himself.

Defendant Saul was initially responsible, along with Defendant Neyman, for strip-searching Hodge upon his return to the jail. The evidence submitted indicates that the officers performed a complete and thorough strip-search of Hodge. Afterward, they placed him in paper

clothing and refused to give him a mat to sleep on. They then placed Hodge in the maximum security cell and indicated he was a suicide watch. The Plaintiff has offered no evidence or testimony that the strip-search and related activities by Defendant Saul were deficient in any way.

After placing Hodge in his cell, Defendant Saul observed an inmate attempting to pass an item to Hodge through an opening in his cell door. There is no evidence in the record as to precisely what was passed, or whether additional items were passed prior to the interruption by Defendant Saul. Defendant Saul described the item as "an empty milk carton" that bounced off the wall and fell to the floor. Afterward, Defendant Saul closed a portion of the open flap between the cells, leaving it partially open for easier observation of Hodge.

The record does not indicate the exact dimensions of the opening, the distance between the cells, or the likelihood that other items could have been secretly and successfully passed between cells. There are no statements from another inmate or inmates that attempted to pass items to Hodge, and there is no evidence that any item could be or ever was successfully passed between the cells.

Despite the possible negligence Defendant Saul exhibited in not searching Hodge's cell after the failed transaction, this Court cannot say that his actions displayed a subjective deliberate indifference to Hodge's condition. Defendant Saul punished the inmate attempting to pass the item, and then closed the flap that made moving items possible. While further investigation might have been prudent, the Plaintiff neither alleges nor offers evidence to show that it was actually necessary under the circumstances.

The totality of Defendant Saul's actions confirm his immunity from suit. Although he might have acted with some degree of negligence in one or both instances, neither the facts as

alleged nor the evidence presented demonstrate a deliberate indifference on the part of Defendant Saul to the risk that Hodge might take his own life. He is, therefore, entitled to qualified immunity from suit.

### Officer David Neyman

Defendant Neyman assisted Defendant Saul in the strip-search of Hodge after booking. As discussed above, the unchallenged evidence establishes that Defendants Neyman and Saul performed an adequate strip-search of Hodge, although they did not perform an additional body cavity search. Because they were not ordered to perform the cavity search, and presumably had no reason to believe one necessary, it was not unreasonable nor deliberately indifferent not to do so. Moreover, there is no evidence or expert testimony to establish the necessity of a body cavity search, either in Hodge's particular case or for inmates on suicide watch in general.[4] Without such evidence, the Court cannot say that Defendant Neyman's failure to perform a body cavity search amounted to deliberate indifference to Hodge. And because Defendant Neyman's actions were at all times objectively reasonable, he too remains immune from suit.

## **CONCLUSION**

In their briefing, the Plaintiff argues that "[t]he issue is not whether they took some steps to prevent the suicide, but whether the steps they took could have reasonably prevented the

---

[4] After his hearing, officers feared that Hodge had taken a dangerous item from the Jones County Courthouse. This fear motivated Officer Flynn to tell Officer Hancock to have Hodge strip-searched after booking. When no item was found, it might have been reasonable to proceed to a body cavity search. Yet the Plaintiff has not alleged, and the evidence has not shown, that this is a reasonable or necessary step following a strip-search. Although a body cavity search might have revealed the instrument Hodge used to take his life, the failure to order the search (or to locate the item) did not result from the deliberate indifference of his jailers.

suicide." This is simply an inaccurate statement of the law. The Defendants are not required to act in a way that prevents all inmate suicides. The law only requires that they not be deliberately indifferent to the risk that an inmate might harm himself. That forgiving standard excuses jailor negligence, even when the plaintiff can prove that the exercise of reasonable care would have prevented the death.

The Plaintiff in this case could likely show reasonable steps that would have definitively prevented Hodge's suicide. But such a showing is irrelevant. To maintain their qualified immunity from suit, the moving Defendants need only prove that they were not deliberately indifferent to the known risk that Hodge might act to harm himself, and that their actions were at all times objectively reasonable. Because the Plaintiff has failed to either allege facts or produce evidence that would establish such indifference, no genuine issue of material fact exists concerning the reasonableness of the moving Defendants' conduct. Consequently, this Court cannot deny the moving Defendants their qualified immunity from suit.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion to dismiss based on qualified immunity [# 34] by Defendants Barbara Hancock, Sam Perdue, Joseph Saul, and David Neyman is **granted**.

SO ORDERED AND ADJUDGED on this, the 3rd day of December, 2007.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE