**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

Heirs of WILLIAM E. HODGE                                       **PLAINTIFFS**

v.                                        **CIVIL ACTION # 2:07cv040-KS-MTP**

JONES COUNTY, MISSISSIPPI                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on a motion for relief from judgment under Rule 60(b)

[Doc. #62] (October 3, 2008), filed by the Heirs of William Hodge (the "Plaintiffs "), and a

motion for summary judgment [Doc. # 57] (September 19, 2008), filed by Defendant Jones

County, Mississippi ("Jones County").  For reasons to follow, the Plaintiffs' motion for relief

from judgment should be **denied**, and the Defendant's motion for summary judgment should be

**granted**.


## I. FACTUAL BACKGROUND

This case arises from the suicide of a pretrial detainee in the custody of the Jones County

Sheriff's Department in 2005.  The pretrial detainee, William Hodge, had become distraught

after he was denied bond in the Circuit Court of Jones County.  For that reason, and due to the

fact that Hodge had suffered an unexplained cut on his hand while at the courthouse, Hodge was

placed on suicide watch when he returned to the Jones County Jail.

When Hodge returned to the jail, Officer Tom Eason – formerly a defendant in this case –

ordered that Hodge be strip-searched and placed on suicide watch.  Officers Saul and Neyman –

also formerly defendants in this case – performed the strip-search.  After strip-searching Hodge,

Saul and Neyman gave Hodge paper clothes, denied Hodge a mat to sleep on, and placed Hodge in a "maximum security cell."  They left several flaps on the cell open to facilitate monitoring Hodge while he was on suicide watch.

Sometime later that day, the guards witnessed an attempt by a prisoner to transfer an unidentified object into Hodge's cell.  A guard saw a prisoner pitch what he described as "an empty milk carton" toward Hodge.  The carton hit the wall and fell to the floor.  The guard responded by closing the flaps on the cell of the prisoner who had tossed the carton.  The guard also narrowed the opening on Hodge's cell.

Later that day, Hodge was found dead in his cell with a "blade [that] appeared to resemble a scissor blade alongside his body."  The Plaintiffs have produced evidence supporting the theory that Hodge obtained the blade at the courthouse before his bond hearing and had surreptitiously brought it into the jail by concealing it in his rectum.  *See* [Doc. #39-2] (November 6, 2007); [Doc. #23-2] (July, 11, 2007).

In February 2007, Plaintiffs filed suit against Jones County and a number of Jones County's employees.  This Court granted motions for summary judgment dismissing each of the individual defendants on qualified immunity grounds, finding no evidence that the individual defendants had been deliberately indifferent to Hodge's suicide risk.  [Docs. #26, #42].  The Plaintiffs now seek relief from the judgments dismissing Defendants Saul and Neyman.  They contend that the Court should reconsider the judgment in light of the Plaintiffs' newly obtained evidence which they contend establishes that Saul and Neyman acted with deliberate indifference.

Jones County filed the pending motion for summary judgment on September 19, 2008.

2

Jones County contends that there is insufficient evidence in the record for it to be held liable for Hodge's death under 42 U.S.C. § 1983.  In particular, Jones County emphasizes that it had clearly established policies and procedures in place to safeguard prisoners and to prevent inmate suicides.

## II. STANDARD OF REVIEW

### A.     Motions Brought Under Rule 60(b)

Rule 60(b) provides:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . .

Relief under 60(b) is "extraordinary . . . and the requirements of the rule must be strictly met." *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992).  "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).  "While this rule is to be liberally construed to do substantial justice, a court should not lightly reopen a final judgment." *Castleberry v. CitiFinancial Mortg. Co.*, 230 Fed. App'x 352, 356 (5th Cir. 2007) (unpublished) (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A Feb. 1981)).  "Implicit in the fact that Rule 60(b)(1) affords extraordinary relief is the requirement that the movant make a sufficient showing of unusual or unique circumstances justifying such relief." *Pryor v. U.S. Postal Service*, 769 F.2d 281, 286 (5th Cir. 1985).

**B.      Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED R. CIV. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This is true "since a complete failure of proof concerning an essential element of the nonmoviing party's case necessarily renders all other facts immaterial."  *Id.* at 323.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and cannot satisfy its burden with "conclusory allegations [or] unsubstantiated assertions."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson,* 477 U.S. at 255.  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### C.    Constitutional Challenges Brought by Pretrial Detainees

When evaluating a constitutional challenge brought by a pretrial detainee, a court must first classify the challenge to determine which standard to apply.  Such challenges can be classified as either an attack on a condition of confinement or as an "episodic act or omission." *E.g.*, *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (citing *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc)); *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare*, 74 F.3d at 644).  Courts are not bound by a plaintiff's classification of his or her own constitutional challenge.  *See Flores*, 124 F.3d at 738 (rejecting the plaintiff's attempt to plead both types of challenges and instead classifying the challenge as an "episodic act or omission" case.).

A "condition of confinement" case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."  *Hare*, 74 F.3d at 644.  "Hence, where a

5

detainee complains of the number of bunks in a cell or his television or mail privileges, the wrong of which the detainee complains is a general condition of confinement." *Scott*, 114 F.3d at 53.

On the other hand, if "the complained-of-harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case."

> In an "episodic act or omission" case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.

*Id.*

Here, the Plaintiffs concede that Jones County "had extensive and rigorous policies to prevent suicidal inmates from taking their own lives." Pl.'s Br. at 1 [Doc. #61] (October 3, 2008). The Plaintiffs argue that Hodge's suicide is attributable to the guards' failure to comply with the written policies. In addition, the Plaintiffs contend the guards' noncompliance is indicative of an informal custom or policy of not abiding the Jones County written policies. *See id.* at 1-4. Hence, the Plaintiffs are complaining first of omissions by jail employees and then pointing derivatively to a custom that permits the omissions. As a result, the Court classifies Plaintiffs' challenge as an attack on an "episodic act or omission." *C.f. Anderson v. Dallas County Tex.*, No. 07-10589, 2008 U.S. App. LEXIS 14258, at 24-25 (5th Cir. July 7, 2008) (unpublished) ("The plaintiffs admit that the defendant had policies in place that, if followed, would have prevented [the] suicide. . . . The plaintiffs ultimately take issue with the . . . failure to follow those policies and procedures. This is a classic episodic-act-or-omission case.").

### III. APPLICATION AND ANALYSIS

**A.      Plaintiffs' Motion for Relief from Judgment**

This Court dismissed Defendants Saul and Neyman after concluding that they were entitled to qualified immunity.  [Doc. #42].  Plaintiffs now argue that newly obtained evidence justifies reviving the claims against Saul and Neyman.  This Court is unpersuaded by Plaintiffs' arguments.

In its opinion dismissing Saul and Neyman this Court evaluated their conduct in strip-searching Hodge and in monitoring Hodge after the strip-search.  Regarding the strip-search, the Court noted that Saul and Neyman had not performed a full cavity search.  The Court noted that Saul and Neyman "were not ordered to perform the cavity search and presumably had no reason to believe one [was] necessary."  [Doc. #42].  Accordingly, the Court held that the failure to perform a full cavity search did not constitute deliberate indifference by Saul and Neyman.  Regarding the subsequent monitoring, the Court noted that the extent to which the officers supervised Hodge after he was placed in the cell was unclear.  Based on the evidence that various precautionary measures had been employed, however, the Court concluded that there was no genuine issue as to whether any of the individual defendants had acted with deliberate indifference.

The Plaintiffs now proffer new evidence that they contend proves Saul and Neyman acted with deliberate indifference to Hodge's risk of suicide.  Namely, the Plaintiffs have obtained the Jones County suicide watch and strip-search policies.  The strip-search policy indicates that "[t]he entire body should be inspected thoroughly, with special attention given to the private parts (rectal area search will include a spreading and bending over)."  [Doc. #57-2] (September

19, 2008). The suicide watch policy indicates that "inmates who are currently suicidal shall be assigned to constant supervision and visually monitored at all times." *Id.*

Plaintiffs contend that they did not receive the Jones County policies until September 8, 2008, when Jones County responded to Plaintiffs' discovery requests. The Court issued its judgment dismissing Defendants Saul and Neyman on December 3, 2007.

The Plaintiffs do not specify which provision(s) of Rule 60(b) support the conclusion that Plaintiffs should receive relief from this Court's prior judgment. Accordingly, the Court will consider the potential applicability of two of the provisions in light of the limited arguments made by the Plaintiffs.

### 1. Rule 60(b)(1)

Rule 60(b)(1) permits relief from a final judgment or order based on "mistake, inadvertence, surprise, or excusable neglect." "Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993). "In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness . . . ." *Id.* "Rule 60(b)(1) . . . may be invoked for the correction of judicial error, but only to rectify an obvious error of law, apparent on the record. Thus, it may be employed . . . when the judicial error involves a fundamental misconception of the law." *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987).

The Plaintiffs have not contended that its failure to obtain the policies sooner was due to mistake, inadvertence, surprise, or excusable neglect. Counsel's carelessness or ignorance of the rules of discovery – even were it alleged – would be insufficient to merit the extraordinary relief

8

of Rule 60(b).  The Plaintiffs do not contend – and this Court does not find – that the Court's judgment dismissing Saul and Neyman was clear legal error.  Consequently, Rule 60(b)(1) provides no basis for relief.

### 2. Rule 60(b)(2)

Rule 60(b)(2) permits relief for evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."  For "a Rule 60(b)(2) motion . . . to succeed, it would be the [movant's] heavy burden to demonstrate to the district court how this newly discovered evidence is "material and controlling and clearly would have produced a different result if presented before the original judgment." *Goldstein v. MCI Worldcom*, 340 F.3d 238, 259 (5th Cir. 2003).

Here, the Plaintiffs have provided no explanation as to why they could not have discovered this evidence earlier.  Although this Court issued an order staying the case on June 18, 2007, it expressly allowed for continued discovery related to the qualified immunity defense. [Doc. #19].  It follows that the newly discovered evidence either (a) could have been obtained through discovery despite that order, or (b) is not relevant, let alone material, to the issue of qualified immunity.  In either instance, Rule 60(b)(2) does not afford Plaintiffs relief from the judgment given the circumstances; this Court will not disturb the finality of a judgment rendered nearly a year ago without a satisfactory explanation for the tardiness of the evidentiary proffer.

In addition, the Plaintiffs have not met their (heavy) burden of showing that the newly discovered evidence is material and controlling.  It is true that the record evidence, when viewed in the light most favorable to the Plaintiffs, indicates that the Jones County policies were not abided by Saul and Neyman.  Critically, however, the Plaintiffs cite no authority for the

proposition that the failure to abide an internal policy establishes deliberate indifference under the qualified immunity standard.  The only case cited by the Plaintiffs, *Forgan v. Howard County, Tex.*, 494 F.3d 518 (5th Cir. 2007), did not even pertain to qualified immunity and did not establish what weight, if any, should be given to noncompliance with a defendant's  internal rules or policies.  *See also Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").  As a result, the Plaintiffs' motion for relief from judgment should be denied.

### B.      Defendant's Motion for Summary Judgment

Jones County contends that there is insufficient evidence in the record for it to be held liable for Hodge's death under 42 U.S.C. § 1983.  "The familiar doctrine of respondeat superior has no application in a section 1983 action against a governmental unit based on the wrongful acts of its employees."  *Grabowski v. Jackson County Pub. Defenders Office*, 79 F.3d 478, 479 (5th Cir. 1996).  To succeed in holding Jones County liable for an episodic act or omission, the Plaintiffs must demonstrate that [1] a Jones County employee acted with subjective indifference, and [2] the Jones County employee's act "resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to [Hodge's] constitutional rights."  *Hare*, 74 F.3d at 649 n.14.  The Fifth Circuit has instructed that "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare*, 74 F.3d at 639 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  "A detainee's right to adequate protection from known suicidal tendencies [is] clearly established . . . ."  *E.g.*, *Flores*, 124 F.3d at 738.

10

Even assuming *arguendo* that the Plaintiffs can prove that one or more Jones County employees acted with subjective deliberate indifference to Hodge's suicide risk, the Plaintiffs' claim against Jones County fails as a matter of law.  The Plaintiffs have produced no evidence that justifies holding Jones County accountable for its employee's conduct as there is no evidence of a policy or custom adopted or maintained with objective deliberate indifference to Hodge's rights.  *Id.*  Indeed, the Plaintiffs concede that Jones County "had extensive and rigorous policies to prevent suicidal inmates from taking their own lives."  Pl.'s Br. at 1 [Doc. #61] (October 3, 2008).  As the Plaintiffs have no proof of a policy or custom adopted or maintained with objective deliberate indifference to Hodge's rights, they resort to the unsubstantiated conclusion that "Jones County's *actual* custom and practices toward suicidal inmates was significantly different from [Jones County's] *stated* policy."  *Id.* at 3 (emphasis added).  Plaintiffs' sole support for this conclusion is the fact that "Saul and Neyman each failed to follow Jones County's stated policies."  *Id.*

It is well established, however, that an employee's violation of a municipality's policy does not give rise to municipal liability absent proof that the municipality had actual or constructive knowledge that its policy was not being followed.  *See Flores*, 114 F.3d at 54-55; *Scott*, 114 F.3d at 54; *Forgan*, 494 F.3d at 522-23; *Hare*, 74 F.3d at 645; *see also Anderson v. Dallas County, Tex.*, 2008 U.S. App. LEXIS 14258, at *34-37.  Plaintiffs neither allege nor prove that the failures of Saul and Neyman were part of a larger pattern of jailhouse employees disregarding Jones County policies.  Nor do the Plaintiffs contend that past detainees have committed suicide due to similar disregard for the written policies.  Consequently, this Court finds no evidence that Jones County had actual or constructive knowledge that its employees

were not abiding its formal policies.  This lack of evidence is fatal to the Plaintiffs' claim against Jones County.  Because Plaintiffs have presented no evidence of policy or custom, there is no genuine issue of material fact.  As a result, Jones County's motion for summary judgment should be granted.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiffs' motion for relief from judgment [Doc. #62] is **denied**, and the Defendant's motion for summary judgment [Doc. # 57] is **granted**.

SO ORDERED AND ADJUDGED on this, the 17th day of November, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE